[J-66-2016] [MO: Dougherty, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 84 MAP 2015 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court at No. 3553 EDA 2013 dated |
| | : | March 5, 2015, reconsideration denied |
| v. | : | May 8, 2015, Vacating & Remanding |
| | : | the Judgment of Sentence of the |
| | : | Montgomery County Court of Common |
| RAFIE L. ALI, | : | Pleas, Criminal Division, dated |
| | : | November 26, 2013 at Docket No. CP- |
| Appellee | : | 46-CR-0005222-2012. |
| | : | |
| | : | ARGUED: May 11, 2016 |

## DISSENTING OPINION

**JUSTICE BAER**                                              **DECIDED: November 22, 2016**

I respectfully dissent from the majority's conclusion that the trial court properly admitted and considered the victim impact statements originally presented in Roger Malloy's DUI-homicide trial when sentencing Appellee for various drug-related convictions. In my view, the majority conflates admissible victim impact testimony with community impact considerations and, in doing so, unduly broadens the Commonwealth's ability to present impact evidence at sentencing. For the reasons that follow, I would hold that the trial court impermissibly admitted and considered the pertinent victim impact statements under the rubric of community impact considerations. Accordingly, I would affirm the Superior Court's order vacating Appellee's judgment of

sentence and remanding for a new sentence without consideration of the impact evidence.[1]

In the majority's view, the admissibility of evidence at sentencing is governed by Subsection 9721(b) of the Sentencing Code, which sets forth the general principle that, when a trial court selects a sentence for a convicted defendant, it must consider, *inter alia*, "the gravity of the offense as it relates to the impact on the life of the victim and on the community." 42 Pa.C.S. § 9721(b).[2] The majority determines that trial courts can

---

[1] Though not at issue in the instant appeal, the Superior Court also determined that the trial court improperly applied various sentencing enhancements when sentencing Appellee. Accordingly, Appellee will receive a new sentence regardless of this Court's decision, and the only question we must answer is whether the trial court can consider the victim impact statements at the new sentencing hearing.

[2] Section 9721 states, in relevant part, as follows:

**(a) General rule.--**In determining the sentence to be imposed the court shall, except as provided in subsection (a.1), consider and select one or more of the following alternatives, and may impose them consecutively or concurrently:

(1) An order of probation.

(2) A determination of guilt without further penalty.

(3) Partial confinement.

(4) Total confinement.

(5) A fine.

(6) County intermediate punishment.

(7) State intermediate punishment.

**(b) General standards.--**In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S. § 9721.

consider the impact of a crime on the community in "myriad ways," including through discrete victim impact statements from other trials. Majority Op. at 16. The majority holds that, here, the victim impact evidence from Roger Malloy's DUI-homicide case was admissible at Appellee's sentencing hearing because the trial court had the discretion under Subsection 9721(b) to consider the impact of synthetic marijuana on the community in determining the severity of Appellee's sentence.

Respectfully, I do not read Subsection 9721(b) as authorizing trial courts to admit "community impact evidence" at sentencing.[3] When read in its proper context, there is nothing in the language of Section 9721 to indicate that the General Assembly intended to authorize the admissibility of any evidence at sentencing. Rather, by its clear and unambiguous terms, Subsection 9721(b) sets forth the general principles that trial courts must consider when choosing among the available sentencing alternatives set forth in Subsection 9721(a). When contemplating the considerations set forth under Subsection 9721(b), a trial court is generally limited to the established record from the trial, the arguments of the parties, and the information contained in the pre-sentence report.

A discrete exception to this general rule, however, allows the Commonwealth to supplement the trial record by introducing victim impact statements at sentencing. The only statutory basis (outside of the capital context) that allows trial courts to admit and

---

[3] To the extent this Court must engage in statutory construction to resolve this matter, such a task is guided by the Statutory Construction Act, 1 Pa.C.S. §§ 1501 - 1991. Pursuant to the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General Assembly's intention. 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). If the General Assembly defines words that are used in a statute, those definitions are binding. Pennsylvania Associated Builders & Contractors, Inc., v. Commonwealth Dep't of Gen. Servs., 932 A.2d 1271, 1278 (Pa. 2007).

consider victim impact statements at sentencing is the Crime Victims Act. 18 P.S. §§ 11.101 - 11.502. Relevant to the instant matter, the Crime Victims Act establishes a "victims' bill of rights," which provides, *inter alia*, that crime victims have the right to present victim impact statements at sentencing hearings. 18 P.S. § 11.201(5).[4] The Crime Victims Act defines "direct victim" as "[a]n individual against whom a crime has been committed . . . and who as a direct result of the criminal act . . . suffers physical or mental injury, death or the loss of earnings under this act" and limits the term "victim" to direct victims and select family members of direct victims. 18 P.S. § 11.103.[5]

---

[4] Subsection 5 of the victims' bill of rights affords victims of crime the following right:

> (5) To have opportunity to offer prior comment on the sentencing of a defendant or the disposition of a delinquent child, to include the submission of a written and oral victim impact statement detailing the physical, psychological and economic effects of the crime on the victim and the victim's family. The written statement shall be included in any predisposition or presentence report submitted to the court. Victim-impact statements shall be considered by a court when determining the disposition of a juvenile or sentence of an adult.

18 P.S. § 11.201(5).

[5] The Act's definitions of "direct victim" and "victim" read, in full, as follows:

> **"Direct victim."** An individual against whom a crime has been committed or attempted and who as a direct result of the criminal act or attempt suffers physical or mental injury, death or the loss of earnings under this act. The term shall not include the alleged offender. The term includes a resident of this Commonwealth against whom an act has been committed or attempted which otherwise would constitute a crime as defined in this act but for its occurrence in a location other than this Commonwealth and for which the individual would otherwise be compensated by the crime victim compensation program of the location where the act occurred but for the ineligibility of such program under the provisions of the Victims of Crime Act of 1984 (Public Law 98-473, 42 U.S.C. § 10601 et seq.).

> **"Victim"** The term means the following:

> (1) A direct victim.

(continued…)

Additionally, this Court has recognized that victim impact testimony "is designed to show [] each victim's uniqueness as a human being . . . [and] is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question." Commonwealth v. Flor, 998 A.2d 606, 633 (Pa. 2010) (citing, *inter alia*, Payne v. Tennessee, 501 U.S. 808, 823-25 (1991) (internal citations and quotations omitted)).[6] Thus, victim impact testimony is a discrete category of evidence that is intended to demonstrate the specific harm suffered by those most directly affected by the crime in question.

Stated succinctly, Subsection 9721(b) simply has nothing to do with admission of evidence at sentencing. Rather, it does no more than set forth the general factors that trial courts must consider when sentencing convicted defendants. Conversely, the

---

(…continued)

    (2) A parent or legal guardian of a child who is a direct victim, except when the parent or legal guardian of the child is the alleged offender.

    (3) A minor child who is a material witness to any of the following crimes and offenses under 18 Pa.C.S. (relating to crimes and offenses) committed or attempted against a member of the child's family:

        Chapter 25 (relating to criminal homicide).

        Section 2702 (relating to aggravated assault).

        Section 3121 (relating to rape).

    (4) A family member of a homicide victim, including stepbrothers or stepsisters, stepchildren, stepparents or a fiance, one of whom is to be identified to receive communication as provided for in this act, except where the family member is the alleged offender.

18 P.S. § 11.103.

[6] Though Flor dealt with victim impact testimony in a capital case, for which there is specific statutory authorization under 42 Pa.C.S. § 9711(a)(2), I find that this Court's description of victim impact testimony in that case is useful here, as it demonstrates that the testimony must be specific to the victims of the crime in question.

Crime Victims Act specifically authorizes victims to present testimony at sentencing regarding the direct consequences of the defendant's crime. Importantly, nothing in the Crime Victims Act or any other statute authorizes the admission of evidence regarding the manner in which a crime impacts a community.

Regarding the evidence at issue in the instant appeal, there is no question that the intimate victim impact testimony originally presented in Roger Malloy's DUI-homicide case was designed to demonstrate the specific harm caused by that crime. For example, the mother of one of the decedents gave the following statement in Malloy's DUI-homicide case:

> And its [sic] just so hard being without my child. I can't eat. I can't sleep. Holidays are hard, especially when my birthday comes around. . . . I can't have my birthday without my baby.

Commonwealth's Memorandum of Law in Support of Permitting Victim Impact Testimony, 10/17/13, Attachment at 35.

This evidence clearly qualified as victim impact testimony in Malloy's sentencing hearing and was properly admitted and considered in that case because it showed the devastation caused by Malloy's decision to drive while intoxicated and the unique impact that the decedents' deaths had on their families' lives. Therefore, the victim impact testimony properly informed the trial court's decision in that case to impose a sentence consistent with the severity of that crime.

However, in the context of Appellee's sentencing hearing for his drug-related convictions, the persons killed as a result of Malloy's DUI-homicide were not persons "against whom" Appellee's drug crimes were committed. Thus, the decedents were not "direct victims" of those crimes. 18 P.S. § 11.103. Because the decedents were not "direct victims" of Appellee's drug crimes, it follows that decedents' family members were not "victims" as defined in the Crime Victims Act. Id. Accordingly, the statements

they made in Malloy's DUI-homicide case were not victim impact statements for the purposes of Appellee's sentencing. Moreover, because Subsection 9721(b) does not authorize the admission of evidence to demonstrate community impact, the admission of the statements in accord with that statutory rubric was error.

The improper admission of these statements was not harmless. Contrary to the majority's conclusion, the trial court's comments at sentencing do not evidence sensitivity to the "level of attenuation" between the DUI-related deaths and Appellee's drug crimes. Majority Op. at 17. While noting that a jury could not have held Appellee responsible for the DUI-related deaths, the trial court nonetheless stated the following rationale for Appellee's sentence:

> [Y]ou certainly were connected to a series of horrific events that led to unspeakable tragedy for the families that this [c]ourt had to listen to during the sentencing phase of Mr. Malloy's case. So I cannot turn a blind eye to it. It is simply a fact. And that was the tragic turn of events that now leads to your conviction and your sentencing.

N.T., 11/26/2013, at 73.

Thus, the trial court erroneously admitted and considered specific impact statements at Appellee's sentencing hearing regarding a crime for which he was not charged. Importantly, this error cannot be overcome simply by recasting the victim impact statements as "community impact evidence" as there is no basis for trial courts to admit and consider "community impact evidence." By holding otherwise, the majority dangerously broadens the definition of admissible impact evidence. Its holding, which lacks statutory, case law, or common law authorization, will permit trial courts to consider impact statements in any case where the Commonwealth is able to assert that a defendant's conduct has impacted a community. This holding renders the statutory limitations and substantial body of case law regarding the admissibility of victim impact evidence largely nugatory, as most victim impact evidence can now be subsumed by

the newly created amorphous category of admissible "community impact evidence." I do not believe that anything in the law before the majority's opinion has ever authorized such a result. Accordingly, I dissent.